**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

JUN 3 0 2015

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **UNDER SEAL** |
| | § | |
| v. | § | CRIMINAL NO. H- |
| | § | |
| JEFFREY EUGENE ROSE, Sr., | § | 18 U.S.C. § 2 |
| PAMELA ANNETTE ROSE, | § | 18 U.S.C. §1347 |
|    aka  Pamela Annette Archbald | § | 18 U.S.C. § 1349 |
| FRANKIE LEE SANDERS, and | § | 18 U.S.C. §1956(h) |
| HUGO GERARDO JAIME, D.C. | § | 18 U.S.C. §1957(a) |
| | § | |

# 15 CR 344

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT ONE**
**Conspiracy to Commit Health Care Fraud –18 U.S.C. § 1349**

At all times material to this indictment:

### A. **INTRODUCTION**

1.     TEAM WORK READY ('TWR") was a health care business with clinics owned by Jeffrey Eugene Rose ("Jeffrey ROSE") and Pamela Annette Rose ("Pamela ROSE") in several different cities and several different states. Claims for payment for health care services from all the TWR clinics were submitted to a single billing office under the control of TWR, located in Houston, Texas.

2.     FEDERAL WORK READY ("FWR") was located at 2626 South Loop West, Suite 522, Houston, Texas 77054. Federal Work Ready North ("FWR North") was also located in Houston, Texas. Alamo Work Ready ("AWR") was located in San Antonio, Texas, and Bayou Work Ready ("BWR") in New Orleans, Louisiana.

## B. **THE DEFENDANTS**

3.      Jeffrey ROSE was a resident of the state of Texas and an owner of TWR. The job titles of Jeffrey ROSE included Chief Executive Officer.

4.      Pamela ROSE was a resident of the state of Texas, and an owner of TWR. The job titles of Pamela ROSE included Vice President of Operations, Chief Financial Officer, Treasurer, and Director of Human Resources.

5.      Frankie Lee Sanders ("Frankie SANDERS") was a resident of the state of Texas and the Vice President of Clinic Operations for TWR.

6.      Hugo Gerardo Jaime, D.C. ("Hugo JAIME, D.C.") was a resident of the state of Texas, and a licensed Texas chiropractor and the Rehabilitation Director for TWR.

## C. **THE FEDERAL EMPLOYEE COMPENSATION ACT AND HEALTH CARE BENEFITS**

7.      Title 18, United States Code, Section 24(b) defined a health care benefit program as any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service was provided to any individual, and included any individual or entity who provided a medical benefit, item, or service for which payment may be made under the plan or contract. The Federal Employee's Compensation Act ("FECA") was a health care benefit program as defined in Title 18, U.S.C. Section 24(b).

8.      FECA provided for payment of workers' compensation benefits to federal employees who suffered an injury, disease, or death in the performance of duty. To establish a claim for benefits, a medical condition was required to be causally related to a claimed injury, disease, or death. Benefits were only available while a work-related condition continued. The benefits under FECA included continuation of pay ("COP") for up to 45 calendar days,

compensation for lost wages, all necessary medical care, medical supplies, vocation rehabilitation services, and disability payments.

9.      The Department of Labor ("DOL") Office of Workers Compensation Program ("OWCP") administered the benefits under FECA. Providers of health care services were required to enroll with OWCP to receive a provider identification number and reimbursement under FECA. Form OWCP-1168 was used for enrollment and updating provider information. By completing and submitting Form OWCP-1168, a provider certified that all the Federal and State licensure and regulatory requirements applicable to their provider type were satisfied.

10.      OWCP contracted with Affiliated Computer Services ("ACS") to provide medical claims processing and payments.  Providers were required to identify in each claim the services provided, and use identifiers including American Medical Association Current Procedural Terminology ("CPT®") codes. All claims submitted were required to be supported by medical evidence. The submission of a claim and acceptance of payment by a provider signified that the service for which reimbursement was sought, was performed as described, necessary, appropriate, and properly billed in accordance with accepted industry standards. It was not within industry standards, among other things, to charge for the services of a professional when a paraprofessional or aide performed the services. Payments were sent to providers via electronic funds transfer ("EFT"). Remittance notices that listed all the claims paid on each EFT were sent to providers.

11.      CPT® codes were designed to be a uniform and accurate method of reporting and communicating medical services and procedures between physicians, health care providers, patients, and third parties. The following CPT® codes were intended to be used when a physician or therapist had direct one-on-one patient contact: 97110 for therapeutic procedures,

97530 for therapeutic activities, 97140 for manual therapy techniques, 97113 for aquatic therapy with therapeutic exercises, 97124 for massage, 97545 for initial work conditioning, and 97546 for additional work conditioning. For physical therapy CPT® codes, 1 unit of treatment was 15 minutes, except for CPT® 97545 which was for 2 hours of treatment and CPT® 97546 which was for each additional 1 hour of treatment.

12.    OWCP required numerous forms to process benefits under FECA. Some of the required forms were:

a.   Form CA-1 for traumatic on the job injuries. CA-1 benefits included up to 45 days of COP.

b.   Form CA-2 for occupational disease.

13.    Injured employees could select the physician to provide treatment, provided the physician was not excluded from the program. Physicians who treated injured federal employees were required to file medical reports and interim medical reports about fitness for duty. Chiropractors could only be reimbursed for services related to manual manipulation of the spine to correct subluxation, and services in the nature of physical therapy under the direction of, and as prescribed by, qualified physicians.

### D.  THE CONSPIRACY

14.    Beginning on or about January 18, 2011, and continuing thereafter to on or about the date of the return of this indictment, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**JEFFREY EUGENE ROSE,**
**FRANKIE LEE SANDERS, and**
**HUGO GERARDO JAIME, D.C.,**

did knowingly and willfully, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely health care fraud in violation of Title 18, United States Code, Section 1347, specifically to execute and attempt to execute a scheme and artifice to defraud FECA, a health care benefit program, and to obtain money owned by and under the custody and control of FECA by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1349.

## OBJECT OF THE CONSPIRACY

15.     It was the object of the conspiracy to unlawfully maximize income and profits to the defendants through the submission of false and fraudulent claims for health care benefits, and through the receipt of payments from other health care providers to whom the defendants sent patients for services. The false and fraudulent claims were for a variety of health care services and included physical therapy that was not provided and health care services that were not ordered as medically necessary by a medical physician.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy included, but were not limited to the following:

16.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did operate TWR solely for the purpose of achieving the objective of their scheme to defraud, specifically to maximize payments from FECA and other health care benefit programs.

17.     Jeffrey ROSE would and did file, and caused to be filed, OWCP-1168 applications for TWR.

18.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did induce federal employees to go to TWR by a promise to never bill them for medical treatment and a guarantee that they would not have to pay for services even if OWCP denied benefits.

19.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did hire and caused to be hired to provide physical therapy at TWR, individuals who were not licensed or trained to provide physical therapy. These individuals were called physical therapy technicians.

20.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did use students from various colleges to provide physical therapy at TWR. The students were not licensed or trained to provide physical therapy, and they worked for free.

21.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did, and attempted to, control the medical services provided at TWR by directing that patients receive the maximum amount of compensable services.

22.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did instruct physical therapy technicians to complete daily physical therapy treatment notes that reflected the maximum number of OWCP pre-approved therapy units and that falsely reflected the actual services provided.

23.     Hugo JAIME, D.C., would and did sign daily treatment notes for physical therapy services that he did not provide or supervise and that did not accurately reflect the actual physical therapy services at TWR.

24.     Jeffrey ROSE, Frankie SANDERS and Hugo JAIME, D.C., would and did, and caused others to, review and modify, embellish, manipulate and falsify patient medical documents and reports, including injury statements, physician evaluations, FCE results, and daily treatment notes.

25.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did submit, and caused to be submitted, false and fraudulent claims to OWCP for direct one-on-one patient physical therapy when the patients were:

    a.   Playing a Nintendo Wii ™ game;

    b.   Sitting in an electronic massage chair;

    c.   Independently using treadmills and exercise bicycles;

    d.   Doing group aqua therapy exercises and playing team water volley ball; and

    e.   Watching television and socializing.

26.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did send, and caused to be sent, patients to certain providers of diagnostic services in return for payments from those providers.

27.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did send, and caused to be sent, to a San Antonio medical facility for treatment, Houston patients in return for payments from an individual associated with the San Antonio facility.

28.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did send, and caused to be sent, patients to physicians in return for payments from the physicians, including to one surgeon with unsteady hands.

29.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did provide, and caused to be provided, to patients, durable medical equipment from Select DME, a company owned by Jeffrey ROSE, that was not medically necessary and that was not used by patients.

30.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did cause pharmacies to bill OWCP for a prescription gel cream that was mailed to TWR patients in return for payments from those pharmacies.

31.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did closely monitor the claims submitted to OWCP and the payments received.

32.     Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did submit, and caused to be submitted to FECA through OWCP, at least $6,787,058.72.00 in false and fraudulent claims and received at least $5,656,778.00 as payment for those claims.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

33.     In furtherance of the conspiracy and to effect the objects thereof, the defendants performed and caused to be performed, among others, the acts set forth in Counts Two through Eighteen of this Indictment, hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment, in the Southern District of Texas, and elsewhere; all in violation of Title 18, United States Code, Section 1349.

## C.  COUNTS TWO – EIGHTEEN
### Health Care Fraud: 18 U.S.C. §§ 1347 and 2

1.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 - 13 of Count One of this Indictment.

2.     Beginning on or about January 18, 2011, and continuing thereafter to on or about the date of the return of this indictment, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE,**
**FRANKIE LEE SANDERS, and**
**HUGO GERARDO JAIME, D.C.,**

defendants herein, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly and willfully, execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely FECA, and to obtain money owned by and under the custody and control of FECA by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

3.      It was a purpose of the scheme and artifice to defraud, to unlawfully maximize income and profits to the defendants through the submission of false and fraudulent claims for health care benefits, and through the receipt of payments from other health care providers to whom the defendants sent patients for services. The false and fraudulent claims were for a variety of health care services and included physical therapy that was not provided and health care services that were not ordered by a medical physician.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

4.      The Grand Jury re-alleges and incorporates by reference as if fully alleged herein, the Manner and Means alleged in paragraphs 16 - 32 of Count One of this Indictment.

## EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

5.      On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE,**
**FRANKIE LEE SANDERS, and**
**HUGO GERARDO JAIME, D.C.,**

defendants herein, aided and abetted by each other and others known and unknown to the Grand

Jury, did execute and attempt to execute the aforesaid described scheme and artifice to defraud

FECA by submitting and causing to be submitted false and fraudulent claims as set forth below:

| COUNT | Name | Claim Ended In # | Alleged Date of Service: | Date Claim Received: | Billed Amount Included: | Paid Amount Included: | Nature of Falsity, Included but Not Limited to: |
|---|---|---|---|---|---|---|---|
| 2 | Bryan B. | *2855 | 11/28/12 | 02/28/13 | $110.00 | $93.04 | 97530 not provided as billed |
| 3 | Bryan B. | *2855 | 04/22/13 | 05/02/13 | $110.00 | $93.04 | 97530 not provided as billed |
| 4 | Rose B. | *5822 | 03/11/13 | 03/12/13 | $330.00 | $295.29 | 97530 not provided as billed |
| 5 | Rose B. | *5822 | 04/08/13 | 04/09/13 | $330.00 | $295.29 | 97530 not provided as billed |
| 6 | Rose B. | *5822 | 06/18/13 | 06/19/13 | $330.00 | $295.29 | 97530 not provided as billed |
| 7 | Allison McB. | *2031 | 10/25/12 | 10/26/12 | $375.00 | $304.41 | 97113 not provided as billed |
| 8 | Allison McB. | *2031 | 01/15/13 | 01/16/13 | $375.00 | $304.41 | 97113 not provided as billed |
| 9 | Lisa N. | *6035 | 09/06/12 | 09/07/12 | $375.00 | $0 | 97113 not provided as billed |
| 10 | Lisa N. | *0977 | 09/06/12 | 09/07/12 | $220.00 | $196.86 | 97530 not provided as billed |
| 11 | Ingrid V. | *0414 | 03/15/12 | 03/16/12 | $220.00 | $192.58 | 97530 not provided as billed |
| 12 | Ingrid V. | *0414 | 01/17/13 | 01/18/13 | $375.00 | $304.41 | 97113 not provided as billed |
| 13 | Debra W. | *3557 | 08/10/12 | 05/23/12 | $110.00 | $93.04 | 97530 not provided as billed |
| 14 | Debra W. | *3557 | 08/17/12 | 08/30/12 | $110.00 | $93.04 | 97530 not provided as billed |
| 15 | Vincent W. | *6277 | 04/02/12 | 04/06/12 | $501.00 | $501.00 | 97546 not provided as billed |
| 16 | Vincent W. | *6277 | 04/10/12 | 04/13/12 | $500.00 | $500.00 | 97545 not provided as billed |
| 17 | Stephanie W. | *2731 | 01/03/13 | 01/04/13 | $275.00 | $246.07 | 97530 not provided as billed |
| 18 | Stephanie W. | *2731 | 01/29/13 | 01/30/13 | $275.00 | $246.07 | 97530 not provided as billed |

All in violation of Title 18, United States Code, Sections 1347 and 2.

### D. COUNT NINETEEN
**Conspiracy to Launder Money and Engage in Monetary Transactions in Criminally Derived Property, 18 U.S.C. §§ 1956(h)**

1.      The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 – 13 and 15 – 32 of Count One of this Indictment related to the conspiracy to defraud a health care benefit programs, specifically FECA.

2.      Beginning on or about July 11, 2013, and continuing thereafter to on or about July 15, 2013, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE, and
PAMELA ANNETTE ROSE**

defendants herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

3.      To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, with the proceeds of specified unlawful activity, that is health care fraud in violation of Title 18, United States Code, Section 1347,  knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and

4.      To knowingly engage and attempt to engage, in monetary transactions within the United States, by, through or to a financial institution, affecting interstate and foreign commerce,

in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## THE MANNER AND MEANS OF THE CONSPIRACY

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

1.　　On July 11, 2013, between 10:49 am and 11:18 am, not long after federal search warrants were executed at TWR clinics located in Houston, Texas, and New Orleans, Louisiana, Jeffrey ROSE and Pamela ROSE would and did transfer at least $695,000.00 out of TWR bank accounts and deposit the money into a bank account ending in *9808 in the name of Reaching Out 2 Youth Corporation, ("RO2Y") a charter school bus company owned by Jeffrey ROSE and Pamela ROSE. The transfers out of TWR accounts included the following:

| Amount | From | Account ending in: |
|--------|------|--------------------|
| $70,000 | Bayou Work Ready | *0550 |
| $50,000 | Alamo Work Ready | *3407 |
| $45,000 | Federal Work Ready North | *7261 |
| $25,000 | Federal Work Ready | *0549 |

2.　　On July 11, 2013, around 12:41 pm Jeffrey ROSE and Pamela ROSE would and did meet at a JP Morgan Chase Bank, in Houston, Texas, and withdraw $700,000.00 from the RO2Y account ending in *9808 as a cashier's check. The remitter on the cashier's check was Glamor by Design, an entity created by Pamela ROSE, and it was payable to Pure Vanity Boutique, Inc., another entity created by Pamela ROSE.

3.     On July 12, 2013, Jeffrey ROSE and Pamela ROSE, would and did open an account ending in *3628 in the name of Pure Vanity Boutique Inc., and deposit the $700,000.00 cashier's check payable to Pure Vanity Boutique Inc., into that account.

4.     On July 15, 2013, Jeffrey ROSE and Pamela ROSE would and did transfer $569,000.00 out of the Pure Vanity Boutique account ending in *3628 and deposit the money back into various TWR accounts. The deposits into the TWR accounts included the following:

| Amount | Into | Account ending in: |
|--------|------|---------------------|
| $30,000 | Bayou Work Ready | *0550 |
| $25,000 | Alamo Work Ready | *3407 |
| $25,000 | Federal Work Ready North | *7261 |
| $50,000 | Federal Work Ready | *0549 |

All in violation of Title 18, United States Code Section 1956(h).

### E.  COUNT TWENTY
### Engaging in a Monetary Transaction in Criminally Derived Property
### 18 U.S.C. §§ 1957(a) and 2

1.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 – 13 and 15 – 33 of Count One of this Indictment related to the conspiracy to defraud a health care benefit program, specifically FECA.

2.     Beginning on or about June 9, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE, and**
**PAMELA ANNETTE ROSE**

defendants herein, did knowingly engage and attempt to engage in a monetary transaction within the United States, by, though, or to, a financial institution affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal of $27,355.81 from an account ending in *3628 in the name of Pure Vanity Boutique Inc., to

purchase a cashier's check in the amount of $27,355.81 payable to Fort Bend Title, such funds having been derived from a specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Sections 1347.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

### F.  NOTICE OF CRIMINAL FORFEITURE
### 18 U.S.C. §§ 982(a)(1), 982(a)(7)

1.      Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendants,

**JEFFREY EUGENE ROSE, and**
**PAMELA ANNETTE ROSE**

that upon conviction for a violation of 18 U.S.C. §§ 1956 and 1957 (related to federal money laundering offenses), all property, real and personal, involved in such offense, or traceable to such property shall be forfeited to the United States, including at least $700,000.00 in United States dollars.

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants,

**JEFFREY EUGENE ROSE,**
**FRANKIE LEE SANDERS, and**
**HUGO GERARDO JAIME, D.C.,**

that upon conviction for a violation of 18 U.S.C. §§ 1347 and 1349 (related to federal health care offenses), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, shall be forfeited to the United States, including at least $5,656,778.00 in United States dollars.

## PROPERTY SUBJECT TO FORFEITURE

3.   The property subject to forfeiture includes, but is not limited to, the following property:

a)   At least $5,656,778.00 in United States dollars.

b)   Real property described as Lot 0086, Block M Shipman, Tract 6, Acres 1.027 Waterbrook, in the City of Missouri City, Fort Bend County, Texas, known as Mc Keever Road.

## MONEY JUDGMENT

4.      Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable. The amount is estimated to be, but is not limited to, at least $5,656,778.00 in United States dollars.

## SUBSTITUTE ASSETS

5.      Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

   a.   cannot be located upon exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value, or

   e.   has been comingled with other property which cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of such property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY