UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUN 0 8 2016

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-15-344-SS |
| JEFFREY EUGENE ROSE, Sr., | § | 18 U.S.C. § 2 |
| PAMELA ANNETTE ROSE, | § | 18 U.S.C. §1343 |
|    aka Pamela Annette Archbald | § | 18 U.S.C. §1347 |
| FRANKIE LEE SANDERS, and | § | 18 U.S.C. §1349 |
| HUGO GERARDO JAIME, D.C. | § | 18 U.S.C. §1957(h) |
| | § | 18 U.S.C. §1957(a) |

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

At all times material to this indictment unless otherwise specified:

1. Title 18, United States Code, Section 24(b) defined a health care benefit program as any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service was provided to any individual, and included any individual or entity who provided a medical benefit, item, or service for which payment may be made under the plan or contract. The Federal Employee's Compensation Act ("FECA") was a health care benefit program as defined in Title 18, U.S.C. Section 24(b).

2. TEAM WORK READY ('TWR") was a health care business with headquarters in Houston, Texas. TWR was owned by Jeffrey Eugene Rose ("Jeffrey ROSE") and Pamela Annette Rose ("Pamela ROSE") and had clinics located in several cities and states. A TWR billing office located in Houston, Texas submitted claims for payment from health care benefit programs, including FECA.

3. FEDERAL WORK READY ("FWR") was a TWR clinic located at 2626 South Loop West, Suite 522, Houston, Texas 77054. Federal Work Ready North ("FWRN") was a second TWR clinic located in Houston, Texas. Alamo Work Ready ("AWR") was a TWR clinic located in San Antonio, Texas, and Bayou Work Ready ("BWR") was a TWR clinic located in New Orleans, Louisiana. All the TWR clinics were operated by the defendants in the same or similar manner as FWR.

## THE DEFENDANTS

4. Jeffrey ROSE was a resident of the state of Texas, an owner of TWR, and the TWR Chief Executive Officer.

5. Pamela ROSE was a resident of the state of Texas, an owner of TWR, and the TWR Chief Financial Officer, Vice President of Operations, Treasurer, and Director of Human Resources.

6. Frankie Lee SANDERS ("Frankie SANDERS") was a resident of the state of Texas and a TWR Vice President of Clinic Operations.

7. Hugo Gerardo JAIME ("Hugo JAIME") was a resident of the state of Texas, a licensed Doctor of Chiropractic medicine ("D.C."), the chiropractor at FWR, and the TWR Rehabilitation Coordinator.

## THE FEDERAL EMPLOYEE COMPENSATION ACT AND HEALTH CARE BENEFITS

8. The Code of Federal Regulations ("CFR") stated that FECA provided for the payment of workers' compensation benefits to federal employees who suffered an injury, disease, or death in the performance of duty. To establish a claim for benefits, a medical condition was required to be causally related to a claimed injury, disease, or death. Benefits were only available while a work-related condition continued. The benefits under FECA included

continuation of pay for up to 45 calendar days, compensation for lost wages, all necessary medical care, medical supplies, vocation rehabilitation services, and disability payments.

9. The Department of Labor ("DOL") Office of Workers Compensation Program ("OWCP") administered the benefits authorized by FECA. OWCP contracted with Affiliated Computer Services ("ACH") to provide FECA medical claims processing and payments. To receive payments under FECA, health care providers ("HC Providers") were required to enroll with OWCP and receive an enrollment number. Enrollment form OWCP-1168 required a group practice to enter the license information and provider type for each professional who would provide services under the group enrollment number. Form OWCP-1168 provided instructions and a list of provider type codes for use on the enrollment application.

10. FECA required HC Providers to itemize their claims for payment, and use Physician's Current Procedural Terminology ("CPT") codes and Healthcare Common Procedure Coding System ("HCPCS") codes to identify the services provided. Medical evidence was required to support all claims submitted for payment under FECA. The CFR stated that the submission of a claim and acceptance of payment by a HC Provider signified that the service, for which reimbursement was sought, was: performed as described, necessary, appropriate, and properly billed in accordance with accepted industry standards. The CFR also stated that industry standards precluded up-coding services, (e.g. providing 15 minutes of a service and charging for 60 minutes of a service, or charging for one-on-one services when the services are provided in a group setting), or charging for the services of a professional when a paraprofessional or aide performed the services.

11. Under FECA, injured employees were able to select any physician, not excluded from the program, to provide services. However, FECA had specific rules regarding payments

for chiropractic services. The CFR stated that FECA would pay for chiropractors who provided services related to the correction of spinal subluxation, and for chiropractors who provided services in the nature of physical therapy under the direction of, and as prescribed by, a qualified physician.

12. The American Medical Association ("AMA") intended CPT codes to provide a uniform and accurate description of health care services, and accordingly published manuals with descriptions of the codes. The AMA CPT manual stated that the following CPT codes were intended to be used when there was direct one-on-one patient contact: 97110 for therapeutic procedures, 97530 for therapeutic activities, 97140 for manual therapy techniques, 97113 for aquatic therapy with therapeutic exercises, 97124 for massage, 97545 for initial work conditioning, and 97546 for additional work conditioning.

## COUNT ONE
### Conspiracy – 18 U.S.C. § 1349

13. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 – 12 of the Introduction Section this Indictment.

14. Beginning on or about January 18, 2011, and continuing thereafter to on or about July 9, 2015, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**JEFFREY EUGENE ROSE,**
**FRANKIE LEE SANDERS,**
**HUGO GERARDO JAIME, D.C., and**
**PAMELA ANNETTE ROSE,**

did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

    a.    To knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely FECA, and to obtain money from FECA by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347;

    b.    To knowingly devise and intend to devise a scheme and artifice to defraud, and obtain money by means of materially false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used in interstate commerce wire communications containing writings, signs, signals, and pictures in furtherance of the scheme to defraud, including electronic claims for payment that resulted in electronic payments from OWCP under FECA, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

### A. Object of The Conspiracy

15.    The object of the conspiracy was to receive payments from health care benefit programs, including FECA, for health care services, including physical therapy, that were not provided as billed.

### B. Manner and Means of the Scheme to Defraud

The manner and means of the scheme and artifice to defraud included, but were not limited to the following:

16.    Jeffrey ROSE, Pamela ROSE, and Frankie SANDERS would and did file, and cause to be filed, OWCP enrollment applications for TWR to obtain the provider enrollment numbers necessary to submit claims for payment under FECA.

17. Hugo JAIME, D.C., would and did allow Jeffrey ROSE and Pamela ROSE to submit his chiropractic license information to OWCP as part of the TWR enrollment under FECA.

18. Jeffrey ROSE, Pamela ROSE, and Frankie SANDERS would and did fail to identify in provider enrollment forms submitted to OWCP, the identity of the individuals who would actually provide the hands on services billed to OWCP under FECA.

19. Jeffrey ROSE, Pamela ROSE, and Frankie SANDERS would and did file, and cause to be filed, ACH payment forms that directed OWCP payments under FECA to be electronically deposited into designated bank accounts controlled by Jeffrey ROSE and Pamela ROSE.

20. Jeffrey ROSE, Pamela ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did advertise and promote TWR as a clinic that specialized in the handling of worker's compensation claims through OWCP.

21. Jeffrey ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did submit, and cause to be submitted, false claims to OWCP for one-on-one physical therapy provided by a chiropractor when in fact:

    a. The physical therapy was not provided by the chiropractor;

    b. The physical therapy was not provided by anyone;

    c. The patients were independently exercising;

    d. The patients were playing a Nintendo Wii ™ game;

    e. The patients were using an electronic massage chair;

    f. The patients were independently using treadmills and exercise bicycles;

    g. The patients were participating in group aqua therapy; and

   h. The patients were watching television and socializing.

  22. Jeffrey ROSE, Pamela ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did employ and use unlicensed individuals to provide services to patients that were falsely billed to OWCP under FECA as physical therapy services provided by a licensed chiropractor.

  23. Hugo JAIME, D.C., would and did sign false daily treatment notes for physical therapy services that he did not provide and that falsely represented the actual services provided to patients.

  24. Jeffrey ROSE, Pamela ROSE, and Frankie SANDERS would and did criticize a chiropractor at FWRN for low clinic revenue, not maximizing treatments, and directed the chiropractor to increase the number of units of physical therapy for each patient billed to OWCP under FECA.

  25. Jeffrey ROSE, Pamela ROSE, Frankie SANDERS, and Hugo JAIME, D.C., would and did submit, and cause to be submitted, to FECA through OWCP at least $11,360,297.00 in false and fraudulent claims from FWR, FWRN, AWR, and BWR for health care services, including physical therapy, between January 2011 and July 2016; and unlawfully received at least $8,925,388.00 in payments from FECA for those claims.

### C. Acts in Furtherance of the Conspiracy

  26. In furtherance of the conspiracy and to effect the objects thereof, the defendants performed and caused to be performed, among others, the acts set forth in Counts Two through Twenty-three of this Indictment hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment, in the Southern District of Texas, and elsewhere; all in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO – EIGHTEEN
### Health Care Fraud: 18 U.S.C. §§ 1347 and 2

1. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 – 12 of the Introduction Section of this Indictment.

2. Beginning on or about January 18, 2011, and continuing thereafter to on or about July 9, 2015, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE,
FRANKIE LEE SANDERS,
HUGO GERARDO JAIME, D.C., and
PAMELA ANNETTE ROSE,**

defendants herein, aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly and willfully, execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely FECA, and to obtain money owned by and under the custody and control of FECA, by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

### A. Purpose of the Scheme and Artifice to Defraud

3. It was a purpose of the scheme and artifice to defraud to receive payments from health care benefit programs, including FECA, for health care services, including physical therapy, that were not provided as billed.

### B. Manner and Means of the Scheme to Defraud

4. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein, paragraphs 15 – 25 of Count One of this Indictment.

## C. Execution of the Scheme to Defraud

5.      On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE,
FRANKIE LEE SANDERS,
HUGO GERARDO JAIME, D.C., and
PAMELA ANNETTE ROSE,**

defendants herein, did execute and attempt to execute the aforesaid described scheme and artifice to defraud by submitting and causing to be submitted false and fraudulent claims to FECA, as set forth below:

| COUNT | Name | Claim Case # Ended In: | Alleged Date of Service: | Date Claim Billed: | Billed Amount Included: | Paid Amount Included: | Nature of Falsity, Included but Not Limited to: |
|---|---|---|---|---|---|---|---|
| 2 | Bryan B. | *2855 | 11/28/12 | 02/19/13 | $110.00 | $93.04 | 2 units of 97530 not provided as billed |
| 3 | Bryan B. | *2855 | 04/22/13 | 04/23/13 | $110.00 | $93.04 | 2 units of 97530 not provided as billed |
| 4 | Rose B. | *5822 | 03/11/13 | 03/12/13 | $330.00 | $295.29 | 6 units of 97530 not provided as billed |
| 5 | Rose B. | *5822 | 04/08/13 | 04/09/13 | $330.00 | $295.29 | 6 units of 97530 not provided as billed |
| 6 | Rose B. | *5822 | 06/18/13 | 06/19/13 | $330.00 | $295.29 | 6 units of 97530 not provided as billed |
| 7 | Lisa N. | *6035 | 09/06/12 | 09/07/12 | $375.00 | $0 | 5 units of 97113 not provided as billed |
| 8 | Lisa N. | *0977 | 09/06/12 | 09/07/12 | $220.00 | $196.86 | 4 units of 97530 not provided as billed |
| 9 | Ingrid V. | *0414 | 03/15/12 | 03/16/12 | $220.00 | $192.58 | 4 units of 97530 not provided as billed |
| 10 | Ingrid V. | *0414 | 01/17/13 | 01/18/13 | $375.00 | $304.41 | 5 units of 97113 not provided as billed |
| 11 | Debra W. | *3557 | 08/10/12 | 08/14/12 | $110.00 | $96.83 | 2 units of 97530 not provided as billed |
| 12 | Debra W. | *3557 | 08/17/12 | 08/21/12 | $110.00 | $96.83 | 2 units of 97530 not provided as billed |
| 13 | Vincent W. | *6277 | 04/02/12 | 04/06/12 | $501.00 | $501.00 | 3 units of 97546 not provided as billed |

| | Name | Claim Case # Ended In: | Alleged Date of Service: | Date Claim Billed: | Billed Amount Included: | Paid Amount Included: | Nature of Falsity, Included but Not Limited to: |
|---|---|---|---|---|---|---|---|
| 14 | Vincent W. | *6277 | 04/10/12 | 04/13/12 | $500.00 | $500.00 | 2 units of 97545 not provided as billed |
| 15 | Stephanie W. | *2731 | 01/03/13 | 01/04/13 | $275.00 | $246.07 | 5 units of 97530 not provided as billed |
| 16 | Stephanie W. | *2731 | 01/29/13 | 01/30/13 | $275.00 | $246.07 | 5 units of 97530 not provided as billed |
| 17 | Michelle B | *3066 | 02/01/13 | 02/05/13 | $165.00 | $147.64 | 3 units of 97530 not provided as billed |
| 18 | Michelle B | *3066 | 02/06/13 | 02/07/13 | $165.00 | $147.64 | 3 units of 97530 not provided as billed |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS NINETEEN THROUGH TWENTY-THREE
### Wire Fraud: 18 U.S.C. §§ 1343 and 2

1.   The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the paragraphs 1 – 12 of the Introduction Section of this Indictment and paragraphs 15 – 24 of Count One of this Indictment.

2.   Beginning on or about January 18, 2011, and continuing thereafter to on or about July 9, 2015, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE,**
**FRANKIE LEE SANDERS,**
**HUGO GERARDO JAIME, D.C., and**
**PAMELA ANNETTE ROSE,**

defendants herein, aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud, and obtain money by means of materially false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used in interstate commerce wire communications containing writings, signs, signals, and pictures, in furtherance of the scheme to

defraud, including electronic claims for payment that resulted in electronic payments from OWCP under FECA on or about the dates set forth in the Counts below:

| Count | Date | Interstate Wire Communication |
|---|---|---|
| 19 | 04/19/12 | Payment from DOL Treasury in the amount of $32,008.32 into JP Morgan Chase bank account ending in #0549 held in the name of FWR |
| 20 | 09/13/12 | Payment from DOL Treasury in the amount of $17,139.87 into JP Morgan Chase bank account ending in #0549 held in the name of FWR |
| 21 | 01/24/13 | Payment from DOL Treasury in the amount of $31,785.82 into JP Morgan Chase bank account ending in #0549 held in the name of FWR |
| 22 | 02/07/13 | Payment from DOL Treasury in the amount of $29,756.43 into JP Morgan Chase bank account ending in #0549 held in the name of FWR |
| 23 | 04/18/13 | Payment from DOL Treasury in the amount of $24,860.06 into JP Morgan Chase bank account ending in #0549 held in the name of FWR |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-FOUR
### Conspiracy to Launder Money and Engage in Monetary Transactions in Criminally Derived Property: 18 U.S.C. §§ 1956(h)

1.   The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 – 12 of the Introduction Section of this Indictment.

2.   Beginning on or about May 30, 2015, and continuing thereafter to on or about September 3, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE and**
**PAMELA ANNETTE ROSE**

defendants herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

3.   To knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce with the proceeds of specified unlawful activity, that is health care fraud in violation of Title 18, United States Code, Section 1347, and wire fraud in violation of Title 18 United States Code, Section 1343, knowing that the transactions were designed in

whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and

4. To knowingly engage and attempt to engage, in monetary transactions within the United States, by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

### A. The Manner and Means of the Conspiracy

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

1. On July 11, 2013, shortly after federal search warrants were executed at TWR clinics, Jeffrey ROSE and Pamela ROSE would and did transfer and cause the transfer of at least $190,000.00 of OWCP payments under FECA out of TWR bank accounts. The transfers out of TWR accounts included the following:

| Amount | From | Account ending in: |
|---|---|---|
| $70,000 | Bayou Work Ready | *0550 |
| $50,000 | Alamo Work Ready | *3407 |
| $45,000 | Federal Work Ready North | *7261 |
| $25,000 | Federal Work Ready | *0549 |

2. On July 11, 2013, Jeffrey ROSE and Pamela ROSE would and did deposit and cause the deposit of approximately $190,000.00 of OWCP payments under FECA into a bank

account ending in *9808 in the name of Reaching Out 2 Youth Corporation, ("RO2Y"). Jeffrey ROSE and Pamela ROSE had signature authority over the RO2Y account ending in *9808.

3. On July 11, 2013, Jeffrey ROSE and Pamela ROSE would and did meet at a JP Morgan Chase Bank ("JP Morgan") in Houston, Texas, and withdraw approximately $190,000.00 in OWCP payments made under FECA from the RO2Y account ending in *9808 via a cashier's check in the amount of $700,000.00. Pamela ROSE signed the withdrawal slip for the $700,000.00 cashier's check using her maiden name, Pamela Archbald. The remitter (i.e. person making the check), was identified as Glamor by Design Inc., and the payee (i.e. person receiving the money) was identified as Pure Vanity Boutique, Inc., ("Pure Vanity") Pamela ROSE was an owner of both Glamor by Design Inc., and Pure Vanity.

4. On July 12, 2013, Jeffrey ROSE and Pamela ROSE, would and did open a JP Morgan bank account ending in *3628 in the name of Pure Vanity and deposited the $700,000.00 cashier's check into that account. Jeffrey ROSE and Pamela ROSE had signature authority over the Pure Vanity account ending in *3628.

5. On July 15, 2013, Jeffrey ROSE and Pamela ROSE would and did transfer at least $130,000.00 out of the Pure Vanity account ending in *3628, and deposit the money back into the following TWR accounts:

| Amount | Into | Account ending in: |
| --- | --- | --- |
| $30,000 | Bayou Work Ready | *0550 |
| $25,000 | Alamo Work Ready | *3407 |
| $25,000 | Federal Work Ready North | *7261 |
| $50,000 | Federal Work Ready | *0549 |

All in violation of Title 18, United States Code Section 1956(h).

## COUNT TWENTY-FIVE
### Engaging in a Monetary Transaction in Criminally Derived Property
### 18 U.S.C. §§ 1957(a) and 2

1. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the paragraphs 1 – 12 of the Introduction Section of this Indictment and paragraphs 15 – 24 of Count One of this Indictment.

2. Beginning on or about June 9, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

**JEFFREY EUGENE ROSE, and**
**PAMELA ANNETTE ROSE**

defendants herein, aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in a monetary transaction within the United States, by, through, and to, a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal of approximately $27,355.81 from an account ending in *3628 in the name of Pure Vanity Boutique Inc., to purchase a cashier's check in the amount of approximately $27,355.81 payable to Fort Bend Title, such funds having been derived from a specified unlawful activity, that is health care fraud and wire fraud, in violation of Title 18, United States Code, Sections 1347.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## NOTICE OF CRIMINAL FORFEITURE
### 18 U.S.C. §§ 982(a)(1), 982(a)(7), 982(a)(2)(A)

1. Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendants,

**JEFFREY EUGENE ROSE, and**
**PAMELA ANNETTE ROSE**

that upon conviction for a violation of 18 U.S.C. §§ 1956 and 1957 (related to federal money laundering offenses), all property, real and personal, involved in such offense, or traceable to such property shall be forfeited to the United States, including at least $700,000.00 in United States dollars.

2. Pursuant to Title 18, United States Code, Section 982(a)(7) and 982(a)(2)(A), the United States gives notice to defendants,

**JEFFREY EUGENE ROSE,
FRANKIE LEE SANDERS,
HUGO GERARDO JAIME, D.C., and
PAMELA ANNETTE ROSE,**

that upon conviction for a violation of 18 U.S.C. §§ 1347 and 1349 (related to federal health care offenses), and 18 U.S.C. § 1343 (related to wire fraud) all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, shall be forfeited to the United States, including at least $8,925,388.00 in United States dollars.

**PROPERTY SUBJECT TO FORFEITURE**

3. The property subject to forfeiture includes, but is not limited to, the following property:

   a. At least $8,925,388.00 in United States dollars.

   b. Real property held in the name Jeffery Rose and Pamela Rose, together with all improvements, buildings, structures, and appurtenances located on McKeever Road in Missouri City, Texas, described as a 1.026 acre tract of land located in the Moses Shipman League, Abstract 986 in Fort Bend County, Texas (said 1.026 acre tract being the same property recorded in Clerk's File Number 9731584 of the Official Records of Fort Bend County), and also described

as Lot 0086, Block M Shipman, Tract 6, Acres 1.027 Waterbrook, in the City of Missouri City, Fort Bend County, Texas.

    c.   $63,309.61 seized on or about July 9, 2015, from an account at Regions Bank ending in #8508, held in the name of Bayou Work Ready Inc.

    d.   $90,392.46 seized on or about July 9, 2015, from an account at Regions Bank ending in #8540, held in the name of Federal Work Ready Inc.

    e.   $41,397.37 seized on or about July 9, 2015, from an account at Regions bank ending in #8524, held in the name of Federal Work Ready North, Inc.

    f.   $25,707.93 seized on or about July 9, 2015, from an account at Regions Bank ending in #8664, held in the name of Team Work Ready Inc.

    g.   An annuity contract with account number ending in #8074, held at Allianz Life Insurance Company of North America in the names of Jeffrey E. Rose and Pamela A Archbald.

## MONEY JUDGMENT

4.   Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable. The amount is estimated to be, but is not limited to, at least $8,925,388.00 in United States dollars.

## SUBSTITUTE ASSETS

5.   Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value, or

    e. has been comingled with other property which cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of such property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

**Original Signature On File**

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY